**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH ZAHL, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>JERI L. WARHAFTIG, et al.,<br><br>Defendants. | Civil Action No. 13-1345 (JLL)(JAD)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way Defendants Jeri L. Warhaftig ("Warhaftig"), Jeffrey Burnstein ("Burnstein"), Elaine Caruso-Long ("Caruso-Long"), Mario Criscito, M.D. ("Criscito"), Sandra Y. Dick ("Dick"), Estate of Paul R. Kenny ("Kenny"), Douglas J. Harper ("Harper"), Kevin Jespersen ("Jespersen"), Stephen Lamazow, M.D. ("Lamazow"), Paul Mendelowiez, M.D. ("Mendelowiez"), the New Jersey Board of Medical Examiners (the "Board," "BME"), Laura Sanders ("Sanders"), and John A. Yulo, M.D. ("Yulo")(collectively, "Defendants")' converted motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [CM/ECF No. 34.] This Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motion is granted.

**I.      BACKGROUND**

As this Court writes only for the parties, and because it set forth the factual background to this case extensively in six previous opinions issued between March 2008 and April 2010, (*See* D.N.J. Docket No. 06–3748), only a broad outline of this matter's factual basis merits discussion.

1

Plaintiff Kenneth Zahl, M.D. ("Plaintiff" or "Zahl") practiced anesthesiology in New Jersey until 2006. He was also licensed to practice in New York and Pennsylvania. During the period of time relevant to this case, Zahl's New Jersey practice involved providing "eye block" anesthesia for Medicare-reimbursed surgery.

Zahl's billing method for the eye block procedures caused friction with the Medicare system, and he was eventually found to have overcharged Medicare. Zahl's former physician employee, a defendant in a prior suit filed by Plaintiff in this Court, Bonnie Blackman, reported his billing issues to the New Jersey Board of Medical Examiners ("BME" or "Board"). Consequently, the Board commenced an investigation ("Zahl I") in 1999 and eventually revoked Zahl's license in 2003.

On his appeal to the Appellate Division of the Board's revocation of his license, Zahl succeeded in obtaining a stay of the revocation from the court on April 11, 2003. On May 5, 2003, the Board imposed a billing monitoring requirement on Zahl, ordering that if he were to bill for any medical activities, such activities must first be witnessed by a medical board approved Nurse Practice Monitor who would keep track of that activity.

On September 15, 2003, the first Practice Monitor to work with Zahl, Patricia Boeglin, R.N. ("Boeglin"), submitted her initial report to the Board. She also submitted that report to a former prosecutor in the Attorney General's office working on the appellate case. After this first report, and after disclosing her contact with the prosecutor to Zahl, Boeglin's relationship with Zahl became strained. At some point after the Zahl/Boeglin working relationship deteriorated, the Billing Monitor assigned to Zahl, Patricia Ross, R.N., found that all of Zahl's coding for his procedures was incorrect. The Attorney General's office filed a complaint in March 2004 seeking

2

to shut down Zahl's practice, but agreed on May 11, 2004, to allow Zahl to continue to practice with new Practice and Billing Monitors.

The Appellate Division eventually upheld the BME's finding of liability in Zahl I, but reduced the punishment from license revocation to sanctions. Both parties appealed to the New Jersey Supreme Court. On January 26, 2006, prior to oral argument before the State's Supreme Court, the Attorney General's office filed a new complaint with the BME ("Zahl II") seeking to close Zahl's practice for failure to comply with the Board imposed monitoring program. After hearings in February of 2006, the Board suspended Zahl's license. Defendant Paul R. Kenny ("Kenny")[1], the prosecutor representing the Attorney General of New Jersey in the monitoring case, died at some point thereafter. On April 26, 2006, the New Jersey Supreme Court reversed the Appellate Division on the issue of punishment and defered to the BME's initial determination that license revocation was warranted. *In re License Issued to Zahl*, 186 N.J. 341, 357 (2006).

Throughout this time, Zahl initiated court proceedings in this District. On March 16, 2001, Zahl brought an action by way of Order to Show Cause for injunctive relief against Harper and other State of New Jersey defendants, attempting to prevent the Attorney General of New Jersey from pursuing portions of the administrative case against Zahl based on Federal preemption. (Order to Show Cause, Docket No. 01–1264, 3/16/2001.) Judge Debevoise dismissed the case on March 30, 2001, based on the doctrine of *Younger* abstention. *Zahl v. Harper*, 282 F.3d 204, 206 (3d Cir. 2002). The Court of Appeals for the Third Circuit affirmed the District Court. *Id.* at 206, 212.

Additionally, on August 10, 2006, Zahl filed his initial complaint before this Court by way of Order to Show Cause, seeking temporary and preliminary injunctive relief. (Order to Show

---

[1] Plaintiff filed suit against Kenny's estate. For the purpose of clarity, this Opinion refers to this Defendant as Kenny.

Cause, Docket No. 06–3749, 8/10/06.) On April 30, 2007, Plaintiff submitted a one-hundred-twenty page Amended Complaint which added several defendants and several new claims for relief, which included constitutional and conspiracy claims. This Court construed Plaintiff's Amended Complaint to assert: (1) a claim for declaratory judgment pursuant to §2201, declaring violations of §§1983, 1985(3), and 1986; (2) injunctive relief pursuant to §1983; (3) monetary damages pursuant to §§1983, 1985(3), and 1986; a Civil RICO claim pursuant to §1962(c) and (d); and state RICO claims.

In a series of six Opinions issued between March 2008 and April 2010, this Court dismissed all of Plaintiff's claims. It also denied Zahl leave to file a proposed Second Amended Complaint ("SAC") and a proposed Third Amended Complaint ("TAC"), because it found that the proposed amendments did not state valid claims and were therefore futile. In one of those six Opinions, this Court dismissed with prejudice all claims related to Zahl II "inasmuch as they relate to the initiation or imposition of the practice and billing monitoring procedures by the Board after his license revocation was stayed" pursuant to *Younger* abstention principles. (Opinion, 5-6, Docket No. 06–3749, 3/9/10.) On appeals, the Third Circuit affirmed these dismissals. *Zahl v. New Jersey Dep't of Law & Pub. Safety Div. of Consumer Affairs*, 428 F. App'x 205, 207-08 (3d Cir. 2011).

Plaintiff filed this Complaint on March 5, 2013. (Docket #1.) This Court construes Plaintiff's 100-page Complaint as asserting constitutional claims asserting violations of his rights pursuant to the First, Fifth, and Fourteenth Amendments of the United States Constitution, state and Federal RICO claims, and a claim for civil conspiracy. Defendants originally filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket #31.) This Court converted that motion into a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and

4

afforded the parties an opportunity to submit further briefing and evidence for the Court's consideration. (Docket #34.)

## II. STANDARD OF REVIEW

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex,* 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252 (3d Cir.1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See, e.g., Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir. 1995).

This Court has jurisdiction of this matter because the Complaint alleges violations of Federal Constitutional rights. 28 U.S.C. §1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution[.]"). Moreover, this Court exercises supplemental

jurisdiction over the claims Plaintiff asserts pursuant to New Jersey state law, as they are "so related to claims in the action [for which] this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).

With this framework in mind, the Court turns now to Defendants' motion.

### III. DISCUSSION

Plaintiff argues that his allegations are sufficiently supported by facts to survive dismissal.[2] Though Plaintiff correctly asserts the standard of review pursuant to Federal Rule of Civil Procedure 12(b)(6), the issue here is not whether Plaintiff's Complaint is properly plead. Instead, the issue here, as Magistrate Judge Joseph A. Dickson explained to Plaintiff during a September 2014 status conference, is whether Plaintiff is barred from asserting his claims against Defendants pursuant to the theories of claim and issue preclusion. (Docket #29; Transcript of Status Conference, 6: 4-13) ("But I think we all understand that issue preclusion and judicial estoppel, collateral estoppel, and Judge Debevoise's order are going to be primary among the things that they're looking at. But I am not telling them that they can't file on normal 12(b) type matters that they might find. I – again, I'm not ruling on this. I am not making any suggestions that anybody should listen very strongly, but I don't think this is an *Iqbal/Twombly* case, I think have a lot of facts, so I think *Iqbal/Twombly* [sic] matter.")

Plaintiff's Complaint appears to be premised on an incorrect interpretation of this Court's rulings in *Zahl v. The New Jersey Department of Law and Public Safety, Division of Consumer Affairs, State Board of Medical Examiners, et al*, 06–3749 (D.N.J. August 10, 2006 – September 21, 2010) ("2006 Case"). Specifically, Plaintiff seems to argue that he is entitled to allege his

---

[2] Defendant originally moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). As explained above, this Court converted that motion into a motion for summary judgment.

Constitutional and Civil RICO claims against Defendants because the Zahl II state court proceedings are no longer pending. (Compl. ¶9.) This Court and several New Jersey State courts, however, have already decided the merits of Plaintiff's claims. At the same time, Plaintiff failed to properly join the Zahl II Defendants in his previous cases, both at the state and federal level, and to amend his complaints with relevant facts that were available at the time, even though he had an opportunity to do so. Defendants argue that they are entitled to summary judgment because Plaintiff's claims are barred by the doctrine of claim preclusion and by this Court's previous *Younger* abstention.[3] (Def. Br. 11.) This Court agrees.

For the foregoing reasons, Defendants' motion for summary judgment is granted. Plaintiff is precluded from re-litigating the claims arising from Zahl I and II in this Court.

A. *Younger* Abstention

Plaintiff's Constitutional claims are barred because of this Court's *Younger* abstention in March 2008. Plaintiff argues that "[t]his action expressly now seeks relief that is 'purely related' to Zahl II and consistent with this District Court's previous abstention ruling while the State Zahl II matter was pending." (Compl. ¶9.) The preclusive effect of a *Younger* abstention, however, is not temporary. This dismissal is permanent and cannot be circumvented by filing a new Complaint naming new defendants once the Zahl II matter is resolved in state court.

On March 25, 2008, this Court dismissed Plaintiff's Zahl II claims with prejudice. It explained that abstention was proper because the Appellate Division could address Plaintiff's "vindictiveness" claims related to Zahl II. Plaintiff later attempted to amend his Complaint a third time to include Defendant Warhaftig as a party. On a March 9, 2010 opinion, this Court explained:

---

[3] Though Defendants also argue that Plaintiff violated an order issued by Judge Debevoise on March 15, 2010, which enjoined Plaintiff "from filing in the Court any pleadings, motions, or applications" dealing with the issues arising out of Zahl's prior lawsuit, it is unnecessary for this Court to consider this issue for the purpose of deciding this motion.

7

> Zahl interprets the March 2008 Opinion as permitting him to allege a broad range of facts from Zahl II, including the addition of a new party, Deputy Attorney General Jeri L. Warhaftig, who worked with the late Paul R. Kenny on Zahl II. The Third Amended Complaint alleges a "continuing and overlapping" single conspiracy throughout Zahl I and Zahl II, thereby seeking to bootstrap the facts of Zahl II into the Zahl I conspiracy.

(Opinion, 5, Docket No. 06–3749, 3/9/10) (citing Third Am. Compl. 109, 112.) This Court held:

> *Younger* abstention, however, operates as a dismissal with prejudice. *Lui v. Commission, Adult Entm't*, 369 F.3d 319, 327 (3d Cir. 2004). This Court cannot now permit Plaintiff to amend his pleadings in such a way as to add a claim or party solely concerned with Zahl II. *Id.* at 328 (abstention under *Younger* places subject of abstention entirely in state court). All claims against Warhaftig related to Zahl II, therefore, are futile. His motion to amend with respect to her is denied with prejudice.

(*Id.*, 5-6.) For these same reasons, Plaintiff's claims in the matter at hand are barred.

### B. Claim Preclusion

Defendant also argues that summary judgment is proper because Plaintiff's claims are barred pursuant to the claim preclusion doctrine. *Res judicata* functions as an affirmative defense to suit, placing the burden on the party asserting such a defense to show that it applies. *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir. 1984). Application of the claim preclusive aspect of the *res judicata* doctrine requires a showing that there has been: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action. *Id.*

Plaintiff does not dispute the first element of the claim preclusion doctrine. Instead, he argues that: (1) there is no privity between the Defendants named in this matter and the defendants named in the 2006 Case; and (2) "new claims defeat the third prong of claim of res judicata[.]" (Pl. Br. 16.) This Court addresses both arguments in turn.

#### 1. Privity

Regarding the second element of the claim preclusion doctrine, Plaintiff argues that there is no privity because Zahl I and Zahl II were different matters, and because the Zahl II Defendants were not involved in Zahl I. (Pl. Br. 17.) This argument is unpersuasive because it fails to address the fact that Plaintiff names three parties that were previously named in the 2006 Case (Kenny, Harper, and the BME) and because it ignores the relationship between the newly named Defendants and the defendants in the 2006 Case.

The Third Circuit describes privity as "merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) (quoting *EEOC v. United States Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990)). "The term 'privity' is used merely as 'a way to express the conclusion that nonparty preclusion is appropriate on any ground.'" *Salerno v. Corzine*, 449 F. App'x 118, 122-23 (3d Cir. 2011) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 894 n. 8 (2008)). "New Jersey courts are more willing to find that parties are in privity if the plaintiff had a full and fair opportunity to litigate its claims in the first action." *Hamburg Music Corp. v. Winter*, No. 04-2738, 2005 WL 2170010, at *3 (3d Cir. Sept. 8, 2005) (citing *Zirger v. General Accident Ins. Co.*, 676 A.2d 1065, 1071 (N.J. 1996)); *Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir. 1950) (explaining that the res judicata doctrine has developed away "from formalism which impedes the achievement of fair and desirable results" in cases where a plaintiff has asserted "essentially the same claim against different defendants" on subsequent occasions). The Third Circuit further explained that, in these circumstances, "courts have . . . enlarged the area of *res judicata* beyond any definable categories of privity between the defendants[.]").

Here, Plaintiff names Kenny, Harper, Warhaftig, Jespersen, Dick, and Burnstein as Defendants, all of whom were employees of the New Jersey Division of Law at some point during

9

Zahl I and Zahl II. Plaintiff also names the BME and Lamazow, Criscito, and Mendelowicz, all of whom are members of the Board. He also names Sanders, an administrative law judge, and two former employees, Caruso-Long and Yulo. The latter was a witness for the state in Zahl II.

Defendants argue that there is privity because the relationship between them and the 2006 Case Defendants is sufficiently close. (See Def. Br. 14-15.) This Court agrees. Defendants Kenny, Harper, and the BME clearly meet this element because they are the same parties named in the 2006 Case. Warhaftig, Jespersen, Dick, Burnstein, and Sanders were all New Jersey state employees that were allegedly involved in Zahl II at the time Plaintiff sued the State of New Jersey for the loss of his medical license. Warhaftig was initially Kenny's co-counsel in the Zahl II matter and took over as lead counsel after Kenny passed away. Jespersen then became Warhaftig's co-counsel. Burnstein supervised Kenny and Warhaftig throughout the Zahl II matter. (Compl. ¶17.) Dick was "served as counsel" for the BME during that same time. (Compl. ¶18.) Sanders was the Administrative Law Judge that handled the Zahl II matter. Lamazow, Criscito, and Mendelowicz were all members of the BME at the time that Plaintiff sued the Board in the 2006 Case. Further, Caruso-Long and Yulo worked for him at the time he alleged RICO and civil conspiracy claims against other ex-employees.

Though Plaintiff's Amended Complaint in the 2006 Case included facts about Zahl II, he did not include any facts about these parties in those pleadings. Importantly, "[c]laim preclusion . . . prohibits reexamination not only of matters actually decided in a prior case, but also those that parties might have, but did not, assert in that action." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993). Plaintiff only attempted to assert a constitutional claim against Warhaftig after this Court made its *Younger* abstention. Plaintiff never alleged RICO or civil conspiracy claims against any of these parties during the 2006 Case even though he knew of their

involvement. Given these connections, and the fact that Plaintiff had a full and fair opportunity to litigate his claims in the first action, this Court finds that Defendants are in privity with the 2006 Case Defendants.

2. Identical claims

As for the third element, Plaintiff argues that Defendant fails to establish the third prong of the claim preclusion doctrine "because as any one can see – once the background section of the complaint is passed, the newer claims related to the NJ Zahl II licensing action, Patient harm and non-prosecution of major health care fraud are totally different." (Pl. Br. 16.) Again, this argument is unpersuasive.

Whether two causes of action are identical depends, in general, on a consideration of:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*Athlone Industries, Inc.*, 746 F.2d at 984. Additionally, as explained above, "[c]laim preclusion . . . prohibits reexamination not only of matters actually decided in a prior case, but also those that parties might have, but did not, assert in that action." *Edmundson,* 4 F.3d 186 at 189. In other words, a new legal theory "does not make the second case different for purposes of claim preclusion." *Jones v. Lapina,* 450 Fed. Appx. 105, 108–9 (3d Cir. 2011). Plaintiff's Complaint asserts constitutional and conspiracy claims against Defendants. This Court considers both types of claims in turn.

i. Constitutional claims

11

Even if Plaintiff's constitutional claims were not barred by this Court's *Younger* abstention, they would still be barred pursuant to the claim preclusion doctrine. Plaintiff asserts three Constitutional claims: (1) a claim for declaratory judgment pursuant to 28 U.S.C. §2201 "Adjudicating violations of 42 U.S.C. §1983 through Defendants' conspiracy to violate §1983[;]" (2) a claim for a prospective injunction pursuant to §1983; and, (3) a claim of conspiracy to violate §1983 by depriving Plaintiff of his equal protection rights and free speech rights pursuant to the First, Fifth, and Fourteenth Amendments of the United States Constitution. These causes of action are identical to the ones Plaintiff asserted in the 2006 Case.

First, the acts complained of in this case are the same as the ones complained of in the 2006 Case. Though Plaintiff's Complaint adds facts regarding how the ALJ, BME, and office of the New Jersey Division of Law handled the Zahl II case, the underlying acts are "the vindictive and retaliatory conduct of the Defendant coconspirators[.]" (Compl. ¶204(1)); (See Compl., ¶240, Docket No. 06–3749, 4/30/07.) Ultimately, Plaintiff in both actions has asked for redress for the alleged conspiracy between his ex-wife, his ex-wife's family, their private investigator, several Assistant Attorney Generals, several Administrative Law Judges, the Board of Medical Examiners, and several of Plaintiff's former employees. Though Plaintiff did not name several defendants from the 2006 Case in the 2013 Complaint, Plaintiff's newest Complaint is an extension of the conspiracy alleged in the 2006 Case. Moreover, the material facts asserted are the same because Plaintiff's Amended Complaint in the 2006 Case included the material factual allegations regarding both Zahl I and Zahl II. (See Compl., ¶¶87-102, Docket No. 06–3749, 4/30/07.)

Second, the theories of recovery in both the 2006 Case and the matter at hand are the same. Plaintiff's Amended Complaint in the 2006 Case asserted claims for "Declaratory Judgment Under 28 USC §2201 Adjudicating Violations of 42 USC §1983," "Prospective Injunctive Relief Under

42 USC §1983," and "Claim for Monetary Damages Under 42 USC §1983." Within Plaintiff's claim for monetary damages pursuant to §1983, Plaintiff contended that Defendant Harper's conduct "deprived Dr. Zahl of his right to equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution and violated 42 U.S.C. § 1983" and "of his rights guaranteed by the First Amendment of the United States Constitution and violated 42 USC §1983." (See Compl., ¶¶250-51, Docket No. 06–3749, 4/30/07.) These are the same theories of recovery for Plaintiff's constitutional claims asserted in the 2013 Complaint.

Finally, the same evidence necessary to maintain the second action would have been sufficient to support the first. As explained above, Plaintiff's second action is premised on the same conspiracy alleged in the 2006 Case. (See Compl. ¶1) ("The 1983 conspiracy action stems from the Defendant conspirators' vindictive and retaliatory scheme."). In order to prove this conspiracy, Plaintiff would have to present the same evidence he would have presented at trial for the first action, including testimony and documents that showed that the Administrative Law Judges, the BME, and the office of the New Jersey Division of Law violated his constitutional rights.

Plaintiff argues that he is not barred by the claim preclusion doctrine because he has alleged new claims. This argument, however, is flawed. As explained above, a new legal theory "does not make the second case different for purposes of claim preclusion." *Jones*, 450 Fed. Appx. at 108-09. To the extent that Plaintiff now brings constitutional claims on behalf of his clients, and those similarly situated, these claims are also barred because "[c]laim preclusion . . . prohibits reexamination not only of matters actually decided in a prior case, but also those that parties might have, but did not, assert in that action." *Edmundson,* 4 F.3d at 189 (3d Cir.1993). Plaintiff could have brought those claims in the 2006 Case, but failed to do so.

13

As such, Plaintiff's constitutional claims are barred by the claim preclusion doctrine because they are identical to those alleged in the 2006 Case and because Defendants are privies of the 2006 Case Defendants.

ii. RICO and Civil Conspiracy claims

The above analysis is the same for Plaintiff's RICO claims. In addition to requesting redress for the same acts, alleging the same material facts, and relying on the same evidence as in the 2006 Case, Plaintiff also asserts the same theory of recovery. Count One of Plaintiff's Complaint asserts a New Jersey Civil RICO violation claim pursuant to §2C:41-2c, contending that Defendants "participated directly or indirectly, in the conduct of Zahl Medical Practice Medical Licensure Enterprise through a pattern of unlawful activity . . . and/or aided or abetted such unlawful conduct of the enterprise . . . and unlawful activity[.]" (Compl. ¶193.) Count Two asserts a "violation of N.J. Stat. §2C:41-2c and §2C:41-2d (conspiracy)." (Compl. pg. 89.) Counts Eight and Nine of Plaintiff's Amended Complaint in the 2006 Case assert the same claims under the same theory of recovery. (Compl., ¶¶270-76; ¶¶277-83, Docket No. 06–3749, 4/30/07.) To the extent that Plaintiff reasserts Federal RICO claims, those claims were also alleged in the 2006 Case. (*Id.* at ¶¶256-69.) The same is true for Plaintiff's Civil Conspiracy claim (Count VII). (*Id* at ¶¶284-90.)

As explained above, this Court abstained from hearing Plaintiff's Zahl II claims in March 2008. This Court, however, emphasized that it was not abstaining from considering the overlapping factual predicate between Zahl I and Zahl II. (Opinion, 27, Docket No. 06–3749, 3/25/2008.) Plaintiff's Amended Complaint in the 2006 Case only alleged the Zahl II facts in support of his "constitutional claim of vindictiveness." He did not include relevant facts regarding RICO or civil conspiracy claims even though he had the opportunity to do so and was represented

14

by counsel at the time. As such, these newly asserted facts and parties are subject to the claim preclusion doctrine.

Still, Plaintiff argues that his RICO claims are not duplicative because this Court never considered the possibility that the BME would revoke his license a second time. He contends that this Court's analysis when dismissing the RICO claims he asserted in the 2006 Case considered only a one-time revocation of Plaintiff's license, not "another frame-up." Plaintiff's understanding of this Court's analysis, however, is mistaken.

In its March 27, 2009 Opinion, this Court dismissed Plaintiff's Federal and State RICO claims because, among other reasons, his allegations lacked the continuity required for such claims. *Zahl, M.D. v. New Jersey Dep't of Law & Pub. Safety*, No. 06–3749, 2009 WL 806540, at *6 (D.N.J. Mar. 27, 2009), *aff'd sub nom. Zahl v. New Jersey Dep't of Law & Pub. Safety Div. of Consumer Affairs*, 428 F. App'x 205 (3d Cir. 2011). At the time, Plaintiff argued that "continuity [was] demonstrated by Harper's participation in more than one of the various suits by and against Zahl, and also by Harper's communication with states outside New Jersey and various judicial bodies regarding Zahl." *Id.* This Court reasoned, however, that Zahl had already lost his license and medical practice in New Jersey. *Id.* By the time this Court issued this Opinion, the New Jersey Supreme Court had already reversed the Appellate Division's decision to reduce Plaintiff's punishment from revocation to sanctions. Moreover, the Administrative Law Judge had issued his initial decision in Zahl II, which redundantly called for revoking Plaintiff's license. As such, the Court considered the racketeering scheme alleged by Plaintiff as one "that has succeeded, ended, and existed only to persecute a single victim, Zahl." *Id.* at *7. Because the New Jersey Supreme Court had already revoked Plaintiff's license, this Court concluded that Plaintiff's license could

not be revoked a second time. Thus, the additional facts that Plaintiff alleges in his 2013 Complaint do not save his pleadings from being duplicative.

As such, Plaintiff's RICO and civil conspiracy claims are barred by the claim preclusion doctrine because they are identical to those alleged in the 2006 Case and because Defendants are privies of the 2006 Case Defendants.

## IV. CONCLUSION

Based on the reasons set forth above, Defendants motion for summary judgment [CM/ECF No. 34] is granted. Plaintiff's Complaint is dismissed in its entirety *with prejudice.*

An appropriate Order accompanies this Opinion.

_____
Jose L. Linares
United States District Judge

Dated: March 13, 2015